## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

DAVID VALENZUELA,

     Petitioner,

v.                                                          No. 2:24-mc-00026-MIS

UNITED STATES OF AMERICA,

     Respondent.

**AMENDED ORDER GRANTING IN PART MOTION FOR RETURN OF PROPERTY**[1]

    **THIS MATTER** is before the Court on Petitioner David Valenzuela's pro se Motion for Return of Property, ECF No. 1 (Dec. 23, 2024) [hereinafter Motion]. Respondent United States responded, ECF No. 3 (Jan. 22, 2025). The Court held a hearing on the Motion on March 3, 2025, at which Mr. Valenzuela and counsel for Respondent were present. Upon due consideration of the parties' submissions, the record, and the relevant law the Court will **GRANT** the Motion in part.

## I.    BACKGROUND

    Mr. Valenzuela was apprehended by U.S. Immigration and Customs Enforcement agents in Santa Teresa, New Mexico on or about June 4, 2023. Mot. at 1. At the time of his initial detention the agents removed several items from Mr. Valenzuela's person, namely: "a cellular telephone; a wallet containing personal identification, social security card, and credit cards; and $1,800 in cash." *Id.* Mr. Valenzuela was thereafter arrested, arraigned, and sentenced, and is currently incarcerated at the Federal Correctional Institution in Texarkana, Texas ("FCI Texarkana"). ECF No. 1-1 at 2. Mr. Valenzuela originally filed the instant Motion in his criminal

---

[1] This Amended Order corrects a scrivener's error in the Court's Order issued on March 7, 2025, ECF No. 7. Given the limited nature of the amendment, this Order does not restart the clock on the deadlines imposed in the Court's initial Order.

case in the Western District of Texas, No. 3:23-cr-01287-DCG, on December 9, 2024. Mot. at 1. On December 19, 2024, Judge Guaderrama (the presiding judge in the criminal case) entered an order transferring the Motion to this Court pursuant to Federal Rule of Criminal Procedure 41(g), which states that a motion for return of property "must be filed in the district where [it] was seized." ECF No. 1-1 at 1-2. The civil action was docketed in this Court on December 23, 2024.

In his Motion, Mr. Valenzuela states that "no order of forfeiture accompanied" the judgment in his criminal case, nor has he received "any Notice of Intent to Seize, Forfeit, or otherwise retain" his property. Mot. at 2. His property has not been returned to him. *Id.* The Government responded that, per U.S. Customs and Border Patrol's "internal guidelines," seized property remains at the border patrol station for thirty days, and if return of the property is not requested "it is destroyed due to lack of capacity to hold it for longer." United States' Resp. Def.'s Mot. Return Property at 1, ECF No. 3 [hereinafter Response]. Additionally, the Government noted, cellular phones are retained as evidence until the case is completed, at which point they are also "destroyed after 30 days if no one has requested [their] return." *Id.* at 2. The Government contends that Mr. Valenzuela was notified of these policies, *id.*, and attaches to its Response exhibits purportedly containing Mr. Valenzuela's signature acknowledging notice, *id.* at 3-4. The Government states that Santa Teresa Border Patrol "still possesses [Mr. Valenzuela's] drivers license, social security card, and a set of keys," which will be held for a further thirty days. *Id.* at 2. Mr. Valenzuela's phone, however, has been destroyed by crush. *Id.* The Government concludes that "the United States is not in possession of any property that may be returned to David Valenzuela." *Id.*

The Court set a hearing on the Motion, ordered the Government not to "destroy or otherwise dispose of any of Mr. Valenzuela's property," and directed the Government to produce

at the hearing "a witness (or witnesses) to give a full accounting of all of Mr. Valenzuela's property, including what was destroyed and what was retained." ECF No. 5. At the hearing, held on March 3, 2025, the Government called Supervisory Border Patrol Agent Luis De Anda to testify about Mr. Valenzuela's property. Agent De Anda testified that Mr. Valenzuela's cell phone was transferred to prosecutors in the Western District of Texas and held as evidence. He stated that Mr. Valenzuela's defense attorney was contacted about retrieving the phone upon completion of the case, but no response ever came, and the phone was subsequently destroyed. To Agent De Anda's knowledge, no attempt was made to contact Mr. Valenzuela in the Bureau of Prisons about his phone. Agent De Anda further testified that Mr. Valenzuela's social security card, driver's license, and keys are still being held at the Santa Teresa Border Patrol Station, attached to Mr. Valenzuela's inventory sheet, and the $1,818 in cash was deposited in and is being held by the El Paso Sector civil forfeiture office. To retrieve his items, Agent De Anda testified, Mr. Valenzuela needs to present himself to the Border Patrol Station (for his IDs and keys) and to the El Paso Sector civil forfeiture office (for his cash). Agent De Anda testified that, to the best of his knowledge, the money would be held for three years from the date of arrest.

Mr. Valenzuela requested that the approximately $1,800 be sent to him where he is incarcerated at FCI Texarkana. He noted that given his sentence he may remain incarcerated past the three-year deadline that Agent De Anda mentioned. Additionally, Mr. Valenzuela's federal probation will be supervised by the Western District of Texas in El Paso, and his travel outside of that district (to New Mexico, for example) may be restricted. Agent De Anda and counsel for the Government represented that there was no procedure to send Mr. Valenzuela his money and other property, though they disclaimed full knowledge of the subject. As to Mr. Valenzuela's cell phone, the Government argued that the Motion was moot because the phone has been destroyed.

The Government directed the Court's attention to the notice documentation, purportedly containing Mr. Valenzuela's signature, that it attached to its Response. Agent De Anda did not testify as to that documentation and the Government did not produce any other foundational witness to do so.

## II.        LEGAL STANDARD

Under Federal Rule of Criminal Procedure 41(g), "[a] person aggrieved by . . . the deprivation of property may move for the property's return." Proceedings on a motion for return of property pursuant to Rule 41(g) "are civil in nature," *Clymore v. United States*, 415 F.3d 1113, 1117 n.4 (10th Cir. 2005), and are "governed by equitable principles," *United States v. Nelson*, 190 F. App'x 712, 714 (10th Cir. 2006). Remedies under Rule 41(g) are "available to [the movant] only if he can show irreparable harm and an inadequate remedy at law." *United States v. Copeman*, 458 F.3d 1070, 1071 (10th Cir. 2006) (alteration in original) (citation omitted). "Once criminal proceedings have terminated, 'the person from whom the property was seized is presumed to have a right to its return, and the government must demonstrate that it has a legitimate reason to retain the property." *United States v. Shigemura*, 664 F.3d 310, 312 (10th Cir. 2011) (quoting *United States v. Clymore*, 245 F.3d 1195, 1201 (10th Cir. 2001)). Pursuant to Rule 41(g), "[t]he district court has both the jurisdiction and the duty to return such property." *United States v. Warner*, No. 19-cr-4275 WJ, 2020 WL 4260613, at *2 (D.N.M. July 24, 2020); *see also United States v. Wilson*, 540 F.2d 1100, 1103 (D.C. Cir. 1976) ("[I]t is fundamental to the integrity of the criminal justice process that property involved in the proceeding, against which no Government claim lies, be returned promptly to its rightful owner.").

## III.        DISCUSSION

The Government neither contests Mr. Valenzuela's ownership interest in the property at issue, nor does it assert any reason it must retain the property. *Cf. United States v. Rodriguez-*

4

*Aguirre*, 264 F.3d 1195, 1205-06 (10th Cir. 2001). Indeed, the Government apparently concedes that Mr. Valenzuela has the right to return of his property, noting in its Response and at the hearing that the majority of the property is available for Mr. Valenzuela to claim. The United States has not initiated any administrative or civil forfeiture action against any of the property at issue. *See Wilson*, 540 F.2d at 1104 ("It goes without saying, that if the Government seeks to forfeit the property a proper proceeding should be instigated to accomplish that purpose. A claim by the owner for the return of his property cannot be successfully resisted by asserting that the property is subject to forfeiture."). Accordingly, the Court holds that Mr. Valenzuela is entitled to the return of his property.

The Government's assertion in its Response that "the United States is not in possession of any property that may be returned to David Valenzuela," Resp. at 2, is demonstrably false. By the Government's own admission, certain of Mr. Valenzuela's property is currently held by Santa Teresa Border Patrol and by the Border Patrol El Paso Sector civil forfeiture office—both offices of the federal government. The United States inarguably is, in fact, in possession of property that must be returned to Mr. Valenzuela.

## A.    Social Security Card, Driver's License, Keys, and $1,818 Cash[2]

With respect to Mr. Valenzuela's social security card, driver's license, and keys, the Government's making them available for Mr. Valenzuela to retrieve at Santa Teresa Border Patrol for another thirty or sixty days does nothing to actually effectuate their return. As Mr. Valenzuela pointed out at argument, (1) he is currently incarcerated and will be for some months to come, and (2) even after his release, he may be unable to travel to New Mexico under the

---

[2] At the hearing, Agent De Anda testified that Border Patrol does not have custody of any wallet or credit cards and no such items were inventoried during arrest according to the Inventory Sheet. Mr. Valenzuela did not contest that representation. Accordingly, the Court will assume that the Government is not (and was never) in possession of such items.

conditions of his federal supervised release in El Paso. Accordingly, the Court directs the Government to mail Mr. Valenzuela's social security card, driver's license, and keys to an individual of Mr. Valenzuela's choice.[3] Mr. Valenzuela shall file a letter on the docket designating an individual (with a mailing address in the continental United States) who he authorizes to receive these items on his behalf. The letter shall include the individual's name and mailing address. The Government is instructed to send Mr. Valenzuela's social security card, driver's license, and keys to the individual at the address provided.

As to the approximately $1,800 in cash being held at the El Paso Sector, the Court orders the Government to send those funds to Mr. Valenzuela's account at FCI Texarkana where he is currently incarcerated. Although counsel for the Government and its witness claimed that the El Paso Sector is unable to send the funds, or they are at least unaware of a procedure to do so, the Court notes that U.S. Attorney's Offices across the country have apparently found methods to send money and return property via mail pursuant to Rule 41(g) motions.[4] The Court is confident that the Government can accomplish the task the Court has ordered. Should a problem arise, the Government may file something to bring it to the Court's attention.

---

[3] The Court assumes that Mr. Valenzuela is unable to receive these items himself at FCI Texarkana. If, however, the Court is mistaken in this assumption, and the Bureau of Prisons is able to hold these items for Mr. Valenzuela until his release, the Government should send the items to Mr. Valenzuela himself.

[4] *See, e.g.*, *United States v. Manzo*, No. 16cr638-LAB-1, 2017 WL 3478713, at *1 (S.D. Cal. Aug. 14, 2017) (ordering the government to send money due to be returned to the defendant "as a check made payable to [Defendant]" to a person of the defendant's choice); *United States v. Contreras*, No. 07-20099-18, 2010 WL 2427408, at *2 (D. Kan. June 11, 2010) (noting that the government "has requested that the Wyandotte County Sheriff's Office, as custodian of [the defendant]'s money, send the funds to be held for him at FCI Fort Worth"); *see also, e.g.*, *United States v. Chikeluba*, No. 1:10-cr-0196-WBH, 2013 WL 1337374, at *2 (N.D. Ga. Mar. 28, 2013) (directing the government to send certain items of movant's property to a third party and to send other items to the Nigerian Consulate); *Shirazi v. United States*, No. 02 C 3220, 2002 WL 31055964, at *2 (N.D. Ill. Sept. 16, 2002) (noting that because "[the defendant] is serving his prison term," he "should communicate through his attorney where the government should send" the items to which he was entitled return); *United States v. Jones*, No. 2:14cr132, 2016 WL 8933629, at *3 (E.D. Va. July 26, 2016) (discussing the government's potential shipping of items seized in Colorado to a location in Florida where the incarcerated defendant's mother could retrieve them); *United States v. Madkins*, No. 3:08-cr-343-J-34MCR, 2015 WL 1523993, at *1 (M.D. Fla. Apr. 2, 2015) (ordering the government to mail certain items to the defendant); Order at 6-7, *United States v. Santome*, No. 8:18-cr-524-WFJ-CPT (M.D. Fla. May 5, 2023), ECF No. 155 (directing the government to mail incarcerated defendant's property from Florida to an individual in Texas identified by defendant).

6

### B. Cell Phone

Mr. Valenzuela's cell phone presents a different issue. According to the Government, Mr. Valenzuela's cell phone has been destroyed. At the outset, the Court notes that the Government arguably has failed to meet its evidentiary burden demonstrating that the phone was, in fact, destroyed. Although the Government attached to its Response an exhibit purporting to document the destruction, the Government did not do anything to authenticate that document, such as by putting on a witness to do so at the hearing, filing a sworn affidavit, or verifying its pleading. *See United States v. Potes Ramirez*, 260 F.3d 1310, 1314 (11th Cir. 2001) ("Although the government alleges in its pleadings that the property sought by [the defendant] was destroyed, these pleadings are not verified and no supporting affidavits have been filed. There is no evidence in the record that [the defendant]'s property was destroyed. Therefore the government has not met its burden in this case[.]"). However, in the interest of avoiding further delay in returning Mr. Valenzuela's property, the Court will assume the phone has been destroyed as the Government alleges.

The Court is extremely troubled by the apparent elevation of U.S. Customs and Border Patrol "internal guidelines" over Mr. Valenzuela's Fifth Amendment rights—as noted above, no forfeiture action was ever commenced regarding Mr. Valenzuela's phone, and yet the Government took it upon itself to destroy it. Nonetheless, the Court is constrained in the relief it may presently offer—it cannot order the return of an item of property that no longer exists. The Tenth Circuit has held that "sovereign immunity bars monetary relief in a Rule 41[(g)] proceeding when the government no longer possesses the property." *Clymore*, 415 F.3d at 1120. However, as contemplated by the Tenth Circuit, the Court will grant Mr. Valenzuela an opportunity to assert an alternative claim for monetary relief as to his phone. *See United States v. Soto-Diarte*, 370 F. App'x 886, 887-88 (10th Cir. 2010) (noting that should the district court

7

determine on remand that the government no longer possessed certain items, it "could grant the movant an opportunity to assert an alternative claim for monetary relief, an approach that is particularly appropriate in the case of pro se movants such as [the defendant]" (citing *United States v. Hall*, 269 F.3d 940, 943 (8th Cir. 2001))); *see also Clymore*, 415 F.3d at 1120 n.7. "Other statutes authorize money damages against the United States, such as the Tucker Act, 28 U.S.C. § 1491, the Little Tucker Act, 28 U.S.C. § 1346(a)(2), and the Federal Tort Claims Act, 28 U.S.C. §§ 2671-81," and "[a] cause of action may accrue under one or more of those statutes when the government discloses that it has lost, destroyed, or transferred property that would otherwise be subject to a Rule 41[g] order to return," in which case "the government's sovereign immunity from an award of money damages may well be waived." *Hall* 269 F.3d at 943. *See also, e.g.*, *Jenkins v. United States*, 71 F.4th 1367, 1375 (Fed. Cir. 2023); *United States v. Blankenship*, No. 88-264-FR, 1989 WL 113032, at *1 (D. Or. Sept. 12, 1989).

**IV.    CONCLUSION**

For the foregoing reasons, the Court **GRANTS in part** Petitioner David Valenzuela's Motion for Return of Property, and **ORDERS** the following:

- The Government shall send Mr. Valenzuela's social security card, driver's license, and keys to an individual of Mr. Valenzuela's choice, as described more particularly above, within thirty (30) days of this Order.

- The Government shall send Mr. Valenzuela's $1,818 to his account at FCI Texarkana (Marshal #98685080), where he is presently incarcerated, within thirty (30) days of this Order.

- Mr. Valenzuela is granted leave to file a new motion asserting any other claim for relief he may have as regards his destroyed cell phone, within sixty (60) days of this Order.

**MARGARET STRICKLAND**
UNITED STATES DISTRICT JUDGE